UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| MARILYN PHOENIX, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil No. 3:23-cv-00001-GFVT |
| v. | ) | |
| | ) | |
| MICHAEL GONTERMAN, *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| Defendant. | ) | **ORDER** |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Plaintiffs'-Counterclaim Defendants' Motion to Dismiss the Defendants'-Counterclaim Plaintiffs' Counterclaims. [R. 15.] Magistrate Judge Atkins previously considered whether granting the Defendants leave to amend their Answer and to include Counterclaims against the Plaintiffs was warranted. [R. 21.] He concluded that it was. Now the question is whether the Counterclaims allege sufficient facts to support plausible causes of action. The Counterclaim Defendants aver that the answer is no. For the reasons that follow, the Motion to Dismiss will be **GRANTED in part** and **DENIED in part**.

**I**

This action commenced on January 3, 2023, when the Plaintiffs filed their Complaint against the Defendants. [R. 1.] The Plaintiffs Marilyn and Bobbi Phoenix brought a number of claims against Defendants Michael Gonterman, Jeffrey Rose, and Travis Rose. The Phoenixes owned an apartment, which they rented to the Roses. *Id.* at ¶¶ 11-12. In late 2021, however, a landlord tenant dispute arose. *Id.* at 3-4; R. 16-2 at 14. The dispute escalated to some sort of altercation on January 4, 2022, between all of the Plaintiffs and all of the Defendants. The

Plaintiffs' claims stem from that altercation, alleging that the Defendants conspired to violate the Plaintiffs' civil rights, used excessive force against them and violated 42 U.S.C. § 1983 for failing to protect. [R. 1 at 7-10.] The Plaintiffs also allege unlawful entry, trespass, assault and battery, false imprisonment, and intentional infliction of emotional distress. *Id*. at 10-14.

The Defendants filed their Answer on March 3, 2023, which did not include any counterclaims against the Plaintiffs. [R. 5.] Then on December 5, 2023, the Defendants filed their First Counterclaims against the Plaintiffs, alleging that Plaintiffs had violated Defendants' rights by engaging in abuse of process, wrongful use of civil proceedings, converting Defendants' vehicle, trespassing onto Defendants' apartment, breaching the rental agreement between the Plaintiffs and Defendants, and violating KRS §§ 383.595, 383.655, and 383.700. [R. 14 at 1-2.] Because the Defendants did not move for leave to assert these counterclaims, however, the Plaintiffs filed a motion to strike the Defendants' counterclaims. [R. 15.] The Plaintiffs' motion also requested that, in the alternative, the Court dismiss the Defendants' counterclaims pursuant to Rule 12(b)(6). *Id*. The Defendants then filed a motion to ask for leave to amend their Answer to assert these counterclaims. [R. 16.] Attached to the Defendants' motion was a proposed amended Answer and Counterclaims, which eliminated the prior claims for statutory violations under the Uniform Residential Landlord and Tenant Act. [*See* 16-2.]

Magistrate Judge Edward Atkins considered the Defendants' motion and ultimately granted leave to amend their Answer to include Counterclaims against Plaintiffs. [R. 21 at 6.] Essentially, Judge Atkins resolved the Plaintiffs' motion to strike. Thus, the only remaining issue is whether the Defendants' counterclaims should be dismissed pursuant to Rule 12(b)(6) for failing to state a claim. The matter is now ripe for review.

2

## II

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must provide grounds for his requested relief that are more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of cause of action will not do." *Id*.

To review a Rule 12(b)(6) motion, courts construe the complaint "in the light most favorable to the plaintiff" and make "all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). The complaint must enable a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To be plausible, a claim need not be probable, but the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A complaint that pleads facts that are consistent with but not demonstrative of the defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 556). The moving party bears the burden of persuading a trial court that the plaintiff fails to state a claim. *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006).

## A

The Counterclaim-Plaintiffs' first counterclaim alleges abuse of process. Under Kentucky law, an abuse of process claim is the "improper use of a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which that process is not designed . . . ." *Garcia v. Whitaker*, 400 S.W.3d 270, 276 (Ky. 2013) (quoting *Sprint*

3

*Communications Co., L.P. v. Leggett*, 307 S.W.3d 109, 113 (Ky. 2010) (cleaned up)).  Two

elements are necessary for a successful abuse of process claim.  The claimant must prove:

(1) and ulterior purpose and (2) a willful act in the use of the process not proper in the regular

conduct of the proceeding.  *Id*. (citations omitted).  In other words, there must be "[s]ome

definite act or threat not authorized by the process, or aimed at an objective not legitimate in the

use of the process . . . ."  *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998).  "The act or

threat usually [sic] manifested by some form of coercion to obtain a collateral advantage, not

properly involved in the proceeding itself, such as the surrender of property on the payment of

money using the process as a threat or a club."  *Sprint Communs. Co., L.P.*, 307 S.W.3d at 114

(quotations and citations omitted).  The process is used as a form of extortion.  *Id*.  But "there is

no liability where the defendant has done nothing more than carry out the process to its

authorized conclusion even though with bad intentions."  *Simpson*, 962 S.W.2d at 394-95 (citing

W. Prosser, *Handbook of the Law of Torts*, Section 121 (4th ed. 1971)).

      The crux of this first claim appears to hinge on the second element, willful act.  The

Counterclaim-Defendants argue that the Counterclaim-Plaintiffs have failed to allege any facts

sufficient to satisfy the second element.  The Court disagrees.  The Counterclaim alleges that the

Phoenixes filed their action for the improper, ulterior purposes of (1) extorting or coercing a

settlement when no reasonable legal basis exists for their claims, (2) to cause the Counterclaim

Plaintiffs to unnecessarily spend money on legal and attorneys' fees to defend themselves, (3) to

embarrass and humiliate the Counterclaim Plaintiffs, (4) to sully the reputations of the

Counterclaim Plaintiffs, (5) to end Gonterman's career as a KSP officer, and/or (6) for some

other ulterior purpose.  [R. 16-2 at 25.]

      Employing the legal process and carrying it out to its authorized conclusions, even with

bad intention, does not constitute an abuse of process.  Thus, the alleged extortion for settlement or causing the Counterclaim plaintiffs to expend resources on legal fees does not constitute an abuse of process.  These acts should not be encouraged.  But neither settlement nor attorneys' fees fall outside of the regular ambit of a legal proceeding.  An injury to name or reputation is also not sufficient to sustain an action for abuse of process.  *Raine v. Drasin*, 621 S.W.2d 895, 902 (Ky. 1981).  An injury to the person or his property, however, such as securing the termination of one's employment, will suffice.  *Isham v. ABF Freight Sys.*, NO. 2004-CA-001349-MR, NO. 2005-CA-000409-MR 2006 Ky. App. Unpub. LEXIS 59 at *31 (Ky. Ct. App. 2006); *see also Raine*, 621 S.W.2d at 902.  Because the Counterclaim alleges that the legal process is being used with ill intention to end Gonterman's career as a KSP officer, it sufficiently alleges an abuse of process.  Thus, the abuse of process counterclaim will not be dismissed.

**B**

The next counterclaim alleges wrongful use of civil proceedings.  The elements of wrongful use of civil proceedings are: (1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings; (2) by, or at the instance, of the plaintiff; (3) the termination of such proceedings in defendant's favor; (4) malice in the institution of such proceeding; (5) want or lack of probable cause for the proceeding; and (6) the suffering of damage as a result of the proceeding.  *Loftus v. Nazar*, 21 F. Supp. 3d 849, 855 (E.D. Ky. 2014) (citing *D'Angelo v. Mussler*, 290 S.W.3d 75 (Ky. Ct. App. 2009)).  Given the third and sixth element, it is apparent that this claim is premature.  Thus, the Counterclaim alleging wrongful use of civil proceedings will be dismissed without prejudice.

**C**

The third Counterclaim alleges conversion.  "Conversion is an intentional tort that

5

involves the wrongful exercise of dominion and control over the property of another." *Outfront Media, LLC v. Lemaster*, 399 F.Supp. 3d 671, 681 (E.D. Ky. 2019) (quoting *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. Ct. App. 2014)).  Kentucky law requires the following elements to satisfy a conversion claim:

> (1) the plaintiff had legal title to the converted property;
>
> (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion;
>
> (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment;
>
> (4) the defendant intended to interfere with the plaintiff's possession;
>
> (5) the plaintiff made some demand for the property's return which the defendant refused;
>
> (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and
>
> (7) the plaintiff suffered damage by the loss of the property.

*Id.* (citing *Jasper v. Blair*, 492 S.W.3d 579, 583 (Ky. Ct. App. 2016); *Ky. Ass'n of Cntys. All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005)).

The conversion counterclaim essentially alleges that the Counterclaim-Defendants interfered with the Counterclaim-Plaintiffs' right to possession of their vehicle, computer, and gaming system.  The Counterclaim-Defendants argue that the counterclaim does not sufficiently allege facts to support findings of the requisite intent, ownership, or beneficial enjoyment necessary to sustain a conversion claim.  [R. 18 at 5.]  They argue that, because the Phoenixes

own the apartment from which the vehicle was towed, and because they were allegedly in possession of a Forcible Detainer Judgment, the Phoenixes were entitled to present possession. [R. 15 at 9-10.]  They also argue that, regardless, the Counterclaim-Plaintiffs' allegations are conclusory and do not meet Rule 8's pleading standard.

Upon review of the Counterclaim, the Court finds that the Counterclaim-Plaintiffs have sufficiently alleged facts that could support a conversion action.  They allege they owned (had legal title to) a vehicle that has never been returned to them.  [R. 16-2 at 22.]  They also aver that they had legal title to their computer and gaming system.  *Id*. at 27.  Thus, the ownership element is met.  And so is the intention element.  Wrongful intent is not required to satisfy conversion; rather, the inquiry is whether the Defendant intended the act that resulted in control over the converted property.  *See Jasper*, 492 S.W.3d at 582-83.  The Counterclaim sufficiently alleges that the Phoenixes took intentional actions to dispossess the Counterclaim-Plaintiffs of their right to enjoy the vehicle, computer, and game system.[1]  Thus, the conversion counterclaim will not be dismissed.

**D**

The next counterclaim is for trespass.  Under Kentucky law, trespass is actionable where a party "enter[ed] or remain[ed] upon land in the possession of another without the possessor's consent." *Riley v. Wells Fargo Bank, N.A.*, Civil No. 16-cv-157-JMH, 2017 U.S. Dist. LEXIS 77258 at *16 (E.D. Ky. May 22, 2017) (quoting *Bradford v. Clifton*, 379 S.W.2d 249, 250 (Ky. 1964)).  The entry must be unauthorized.  *Id*.  The Counterclaim-Plaintiffs allege that, at all times before January 19, 2022, the Roses had a legal right to occupy and enjoy their apartment.  They

---

[1] The Court notes that any questions of ownership or title related to the Forcible Detainer Judgment are better suited for the summary judgment stage.  Based upon the pleadings alone, the Court finds that the conversion counterclaim can proceed.

contend that the Phoenixes "entered or remained upon the Roses' Apartment without the Roses' consent, and such entry was unauthorized." [R. 16-2 at 28.]

The Counterclaim Defendants argue that an oral rental agreement between the parties had long been breached before they entered the property, therefore, their ownership of the property forecloses any trespass action. [R. 18 at 8.] The Counterclaim-Defendants also aver that the Roses failed to pay rent and water bills, and that the property had been abandoned in fact. *Id*. at 8-9. The Counterclaim-Defendants also argue that "private necessity" supports a finding that they had a right to enter their property in order to prevent waste. *Id*. at 9-10. Like other arguments made by the Counterclaim-Defendants, these arguments, which require the Court to analyze the record in order to test the sufficiency of claims, are best suited for consideration at the summary judgment stage. *See Riley*, 2017 U.S. Dist. LEXIS 77258 at *19 ("To the extent that Defendant's authority to enter onto the premises is controlled by the terms of the parties' Agreement, the issue of whether a trespass occurred must be passed until the merits of the breach of contract claim are determined."). At this juncture, considering the Counterclaim-Defendants' factual challenges would be premature. Because the counterclaim sufficiently alleges a trespass action, the claim will not be dismissed.

## E

The final counterclaim alleges breach of contract. In Kentucky, breach of contract requires "(1) the existence of a valid contract; (2) breach of the contract; and (3) damages or loss to plaintiff." *Riley*, 2017 U.S. Dist. LEXIS 77258 at *16. The Counterclaim-Plaintiffs allege facts supporting a claim that the Roses and the Phoenixes entered into a valid rental contract for the Apartment [R. 16-2 at 13,] and that the Phoenixes breached the contract causing damages. The Counterclaim-Defendants argue that "[t]he Breach of Contract claims are directly related to

8

the eviction, for which the Roses did not contest." [R. 15 at 11.] The Counterclaim-Defendants also contend that the Forcible Detainer Judgment proves that the Roses breached the contract, that the Phoenixes were entitled to repossess their land, and that the Counterclaim Plaintiffs are collaterally estopped from arguing the alternative. *Id.* Again, these arguments are better suited for summary judgment. Based on the facts alleged in the Counterclaim-Plaintiffs' counterclaim, a breach of contract claim is plausible. Thus, dismissal is inappropriate.

### III

The Counterclaim-Defendants' arguments meaningfully challenge the counterclaims asserted against them. Many of those arguments, however, are better suited for consideration down the road. Given the Court's limited role of reviewing the Counterclaim-Plaintiffs' counterclaims for facts that could plausibly give rise to the alleged causes of action, only one counterclaim action warrants dismissal. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Counterclaim-Defendants' Motion to Dismiss [**R. 15**] is **GRANTED in part** and **DENIED in part**;

2. Count 2 of the Counterclaim-Plaintiffs' Counterclaim, which alleged Wrongful Use of Civil Proceedings, **SHALL** be dismissed without prejudice;

3. All other claims shall be permitted to proceed.

This the 13th day of August 2024.



Gregory F. Van Tatenhove
United States District Judge